## *In re* Keech's Estate.

*(Supreme Court, General Term, First Department.* June 6, 1890.)

LEGACY TAX—EXEMPTIONS—ALMSHOUSES.

    A charitable institution which requires, as a condition of entrance thereto, the making of a will by the applicant in its favor, and the payment of an admission fee, which, however, the trustees, "in exceptional cases," may remit, is not an "alms house," within 2 Rev. St. N. Y. (8th Ed.) p. 1083, § 4, so as to exempt a bequest to it from the legacy tax imposed by Laws N. Y. 1885, c. 483, as amended by Laws 1887, c. 713. Affirming 7 N. Y. Supp. 331.

Appeal from surrogate's court, New York county.

The report of the appraiser of the estate of Charlotte G. S. Keech, deceased, assessed and fixed the legacy tax on a legacy to the Baptist Home Society of the city of New York. For the surrogate's opinion, see 7 N. Y. Supp. 331.

Argued before VAN BRUNT, P. J., and BARTLETT, J.

  *Mornay Williams*, for appellant. *R. S. Selmes*, for comptroller, respondent.

VAN BRUNT, P. J. The single question in this case arises under chapter 483 of the Laws of 1885, as amended by chapter 713 of the Laws of 1887, providing for a state tax on collateral inheritances. The point at issue is whether the Baptist Home Society of the city of New York is a society, corporation, or institution "now exempted by law from taxation." The appellant is a corporation organized under the General Statutes of the state of New York for the incorporation of benevolent, charitable, scientific, and missionary societies, and the acts amendatory thereof. The particular business and objects of the society, as stated in its certificate of incorporation, and reaffirmed in its constitution, (article 2,) are "to provide the aged, infirm, or des-

titute members of the Baptist Churches with a comfortable residence, with board, clothing, skillful medical attendance, with their accustomed religious services, and at their death with respectable burial." Article 3 of the constitution of the society provides as follows: "The payment of three dollars, or more, shall constitute a person an annual member of this society. Each person on whose behalf fifty dollars is paid to this society, at one time, shall thereby be constituted a life member of the society, for his or her natural life. Each person who pays, or for whom there is paid, to this society, one thousand dollars, shall thereby be constituted a patron of the society, for his or her natural life, and shall be entitled, during his or her life, to have one person at a time°continously maintained by this society at its home. Each person who pays, or for whom there is paid, to this society, two thousand dollars, or more, shall not only be constituted a patron for life, with the right to have one person at a time continuously maintained by this society at its home, but shall be entitled to devise the aforesaid right to any person during the life of such person." Article 13 of the said constitution is as follows: "Applicants who shall be recommended by the pastor and deacons of the church to which they belong, or who shall give other satisfactory evidence of their good standing as members of a regular Baptist Church in the city of New York, for a period of not less than five years next preceding their last application, and who have no means of support, nor relatives who will provide for them, shall be received as inmates of the home on the payment of $100. This entrance fee shall not be required of those who are presented by patrons. In exceptional cases, under peculiar circumstances, the trustees may admit applicants who cannot comply with the provisions of this article." It appears from the affidavits of two trustees of the society that "a number of persons have been admitted, under article 13 of the constitution, without any entrance fee being demanded of them, and a number more are admitted on the nomination of the patrons without paying entrance fee." The following provisions of the by-laws are pertinent to the present inquiry: Article 5, § 1: "The trustees shall keep the building in repair, pay salaries and wages, and cause the objects of the society to be faithfully carried out." Section 6, par. 2: "This committee [on applications] shall visit accepted applicants, and obtain their signature to a contract accepting the terms of admission, and to a will transferring to the home, for the consideration of one dollar, all the property of which they are or may be possessed." Article 6, ("Terms of Admission,") § 2: "Applicants who are in possession of property, or who bring furniture or bedding to the home, shall be required to make written transfer of the same to the society, on their admission. They shall also be required, in the same manner, to transfer to the society property acquired subsequent to their admission, if they elect to remain thereafter inmates." Section 3: "If inmates leave the home for any cause, their entrance fee is in no case returned to them." Section 4: "Persons may be admitted occasionally as boarders, though not to the exclusion of dependent applicants who desire a permanent home. The boarders will be desired to give satisfactory security for the regular payment of their board."

The appellant claims that the Baptist Home is an almshouse, and is therefore exempt from taxation. The provision under which immunity is claimed in the present case is found in 2 Rev. St. (8th Ed.) p. 1083, pt. 1, c. 13, tit. 1, § 4, subd. 4, which relieves from taxation "every poor-house, almshouse, house of industry, and every house belonging to a company incorporated for the reformation of offenders or improving the moral condition of seamen, and the real and personal property used for such purposes belonging to or connected with the same," and cites the case of *Association for Colored Orphans* v. *Mayor, etc.*, 104 N. Y. 581, 12 N. E. Rep. 279, as an authority sustaining the proposition claimed. The association, the plaintiff in the case cited, was incorporated "to provide and maintain a place of refuge for colored orphans,

where they shall be boarded and suitably educated," and it was held that its building came within the fair meaning of an "almshouse," which had been defined to be a house appropriate for the poor, because the building was appropriated wholly for the poor, who were colored orphans, and where they were to have a place of refuge, and to be boarded, clothed, and suitably educated, etc., gratuitously. The court, in its opinion, further say: "The plaintiff is performing a work of pure charity, and is taking upon its shoulders a portion of the burden that would otherwise fall upon the public." The principle upon which this exemption from taxation is based seems to be because such an association, in performing the duty for which it was incorporated, takes a portion of a public burden upon it own shoulders. In the case at bar the association not only does not support its inmates gratuitously, but almost invariably demands the payment of a substantial entrance fee from each applicant for admission, and a transfer of all property then owned or subsequently acquired by such applicant; and express provision is made for the reception of boarders who shall give satisfactory security for the regular payment of their board. It is true that persons nominated by patrons of the society are admitted free, but to become a patron requires the payment of at least $1,000 to the association, and only one person can be kept by a patron in the home at one time; thus the equivalent of an entrance fee, and probably more, has been received by the society. It is also true that, in some instances, the payment of an entrance fee has been waived, but it would seem from the guarded way in which the statement is made that the cases are not numerous. The good offices, therefore, of the appellant society are not rendered wholly gratuitously. Payments must be made as a rule to enjoy its benefits, and hence it does not come under the definition of an "almshouse." Our attention is also called to the case of *People* v. *Barber*, 42 Hun, 27; affirmed, 106 N. Y. 669, 13 N. E. Rep. 936, as sustaining the view that the receipt of fees or compensation from inmates does not exclude from the benefit of the statute. In that case it was held that a farm attached to a seminary of learning, all of whose products were used upon the premises to supply those engaged as teachers, students, and servants, was exempt from taxation. This exemption arose from the statute exempting from taxation every building erected for the use of a college, incorporated academy, or other seminary of learning, and the several lots whereon such buildings so used are situated, etc. It will be noted that exemption does not depend upon the institution being open to the poor. The only condition being that its buildings shall be used for the purposes named in the statute. Fees may be charged sufficient to pay its expenses without forfeiting its claim to the exemption, the theory being that such exemptions are in furtherance of the policy of this state to encourage, foster, and protect corporate institutions of a religious and literary character, because of the beneficial influence by them exerted, and because they are necessary to the advancement of civilization and to the promotion of the welfare of society. In the case at bar, however, the right to exemption rests upon a different basis, viz., that the association entitled to exemption is performing a work of charity, and is taking upon its own shoulders a portion of the burden that would otherwise fall upon the public. We have also examined the opinion in the case of *St. Vincent's Hospital* v. *Mayor, etc.*,[1] and, without expressing any opinion as to the correctness of that decision, it is sufficient to say that the facts differ radically from the case at bar in that no one was refused admission because of unwillingness or inability to pay, whereas in the present case the rule was to pay, or be excluded. It is true there are exceptions to the rule, but the exception does not abolish the rule. Upon the whole case, we think that the appellant affords a refuge for those who can pay, and not for those who cannot, and therefore does not maintain an alms-

[1] See note at end of opinion.

house, which is defined to be "a house appropriated for the poor." The order appealed from should be affirmed, with costs.

NOTE.

The opinion in St. Vincent's Hospital v. Mayor, etc., of New York, (supreme court, special term, New York county,) was filed July 1, 1889, and is as follows: "O'BRIEN, J. Immunity from taxation is claimed in the present case by force of the provision to be found in Rev. St. (8th Ed.) p. 1083, pt. 1, c. 13, tit. 1, § 4, which relieves from taxation every poor-house, almshouse, house of industry, etc. It is claimed that plaintiff's property used for hospital purposes is 'an almshouse' within the meaning of the statute. In the case of Association v. Mayor, etc., 104 N. Y. 586, 12 N. E. Rep. 279, an almshouse is defined as 'a house appropriated for the poor.' See, also, Dispensary v. Mayor, etc., 4 N. Y. Supp. 547. Plaintiff was incorporated under the act of 1848, and its objects and purposes are to maintain 'an hospital for the aid and support of the indigent sick in the city of New York.' It is conceded that its entire income, which is derived from charitable contributions, and from payments made by such persons as are both willing and able to pay for attendance at the hospital, is devoted to the above objects. No one is ever refused admission by reason of unwillingness or inability to pay, and that the money received from those who do pay is appropriated to defray the expenses of the institution, and to that extent enlarges its capacity for charitable purposes. Under the authority cited, (104 N. Y. 586, 12 N. E. Rep. 279,) it is evident that if St. Vincent's Hospital had no other than free patients the property would be exempt. It appears from the agreed facts here that all the money received from patients who pay is used in support of the free patients, and thus enlarges the scope of its beneficence. It can therefore be said that the building is appropriated wholly for the poor. Its use is the free support of the indigent sick, and the proof shows that no one is ever refused admission through unwillingness or inability to pay. I fail to see, therefore, what force there can be in the argument that, because some pay-patients are received whose money, with other charitable contributions, is used in carrying out the objects and purposes of the institution, this circumstance should prevent their receiving that immunity which otherwise they would be entitled to under the law. The cases of Seminary v. Cramer, 26 Hun, 309, and Young Men's Christian Ass'n v. Mayor, etc., 44 Hun, 102, favor plaintiff's contention that the exclusive use of the building for hospital purposes does not alone determine the question of its right to exemption from taxation. It should be noted that the statute requires, as to buildings erected and claiming exemption as colleges, places of public worship, etc., that they should be used 'exclusively' for such purposes. In the section relating to poor-houses, almshouses, etc., the words 'exclusively used' are omitted. But apart from this distinction, and construing the two sections of the statutes relative to these different institutions in the same way, I think the plaintiff can justly claim the exemption. Neither the sisters of charity in charge nor the doctors receive any compensation. No income is derived, except such as is exclusively devoted for the benefit of the indigent sick, and it may therefore be fairly claimed that the building is exclusively used for the sick poor. It appearing, therefore, that the objects and purposes for which the building was erected and the property has been used was a hospital for the aid and support of the indigent sick in the city of New York, it is entitled to the exemption provided by statutes, and upon the agreed facts should have judgment accordingly."

---

STEVENS *et al.* *v.* UNION TRUST CO. *et al.*

*(Supreme Court, General Term, Third Department.* September 25, 1890.)

RAILROAD COMPANIES—BONDS AND MORTGAGES—FORECLOSURE.

 A trust company, as trustee for holders of the first mortgage bonds of the L. S. Railroad Company, and of the H. E. Railroad Company, in which the L. S. Company had been merged by consolidation, obtained judgments of foreclosure and sale, effective, if executed, to vest title in the purchaser under them of the L. S. Railroad. P. and D., who were holders of the bonds of both companies, claiming to act for the bondholders, bid off the property, paying nothing but the costs, and had the referees' deeds made to H. and L., their clerks. H. and L. paid nothing, but, at the request of P. and D., made to the latter their bond for $5,000,000, secured by their mortgage of the L. S. Railroad. The N. Y., B. & M. Company, which was formed by the consolidation of the H. E. Company and others, then agreed to purchase the L. S. Railroad, and to provide for the payment of the $5,000,000 by bonds to be issued by it; and H. and L. conveyed the railroad to that company for a nominal consideration, subject to the mortgage. The N. Y., B. & M. Company thereupon mortgaged its entire property, and sold the mortgage bonds, to the amount of $6,000,000, to *bona fide* purchasers, and out of the proceeds paid to P. and D. part of the H. and L. mortgage. The N. Y., B. & M. Company, in conjunction with P. and D., leased the L. S. Railroad to another company, and soon after became insolvent, and a receiver was appointed. The lessee of the L. S.